UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


UHURU'SEKOU KAMARA AJANI
OBATAIYE-ALLAH,

       Plaintiff,

  v.

OREGON DEPARTMENT OF
CORRECTIONS, HEIDI STEWARD,
Assistant Director, STUART YOUNG,
Assistant Administrator Religious Services, D.
HOLMES, Administrator Religious Services,
BORDEN, Chaplain at OSCI,

       Defendants.

Case No. 2:19-cv-68-JR

ORDER

RUSSO, Magistrate Judge:

     Pro se plaintiff, an inmate at Two Rivers Correctional Institution, filed suit pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights under the First Amendment (Free Exercise Clause, Establishment Clause, and retaliation), the Fourteenth Amendment (equal protection), and the Eighth Amendment (cruel and unusual punishment). Plaintiff further alleges that defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Finally, plaintiff alleges a series of state law claims, including claims for

1   - ORDER

negligence, abuse of process, and breach of contract.  Plaintiff seeks declaratory and injunctive relief in addition to money damages.  Plaintiff moves for summary judgment and defendants cross-move for summary judgment.  For the reasons stated below, plaintiff's motion is denied, and defendants' motion is granted.

## CONSENT

On or about January 18, 2019, plaintiff submitted written consent to magistrate jurisdiction as follows:

> Pursuant to Fed. R. Civ. P 73(b), … I consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including entry of orders on dispositive motions, trial, and entry of final judgment. I understand that withholding consent will not result in any adverse consequences. Pursuant to Fed. R. Civ. P. 73(c), I agree that an appeal from a judgment entered at a Magistrate Judge's direction may be taken to the court of appeals as would any other appeal from a district court judgment.

(ECF #5).

Full consent by all parties was entered March 20, 2019. ECF #18; see also ECF #12.

> The Federal Magistrate Act provides:
>
> Upon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636(c)(1).

The statute also provides that the court shall take positive steps to ensure that the parties understand their right to consent, and to protect the voluntariness of that consent. 28 U.S.C. § 636(c)(2). Upon entry of judgment, appeal may be made directly to the appropriate court of appeals, 28 U.S.C. § 636(c)(3), but the district court may vacate the reference "for good cause shown on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(6).

In accordance with the procedures noted above, both parties signed a form expressly consenting to magistrate jurisdiction. On November 12, 2019, plaintiff purported to withdraw consent asserting the magistrate is "biased" because she has ruled against him on defendants' motions and "the case has not moved faster with consent." ECF #69. The Court construes plaintiff's filing as a motion to withdraw consent.

Parties may waive even fundamental rights, including the right to be free from self-incrimination, Garner v. United States, 424 U.S. 648, 96 (1976); the right to counsel, Adams v. United States ex rel. McCann, 317 U.S. 269 (1942); the right to be free from unreasonable searches and seizures, Schneckloth v. Bustamonte, 412 U.S. 218 (1973); the right to a jury trial, Duncan v. Louisiana, 391 U.S. 145, 158 (1968); and, by pleading guilty, the right to trial itself. See Boykin v. Alabama, 395 U.S. 238, 243 (1969). When a right, including a fundamental right, is knowingly and voluntarily waived, a party has no constitutional right to recant at will. See, e.g., Schneckloth, 412 U.S. at 219.

A party to a federal civil case has, subject to some exceptions, a constitutional right to proceed before an Article III judge. Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc., 725 F.2d 537, 541 (9th Cir. 1984) (en banc). As with the rights noted above, this right can be waived, allowing parties to consent to trial before a magistrate judge. Id. at 542; 28 U.S.C. § 636(c)(1). Once a civil case is referred to a magistrate judge under section 636(c), as previously noted, the reference can be withdrawn by the court only "for good cause shown on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(6); Fed. R. Civ. P. 73(b); Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir. 1984). There is no absolute right, in a civil case, to withdraw consent to trial and other

proceedings before a magistrate judge. Dixon v. Ylist, 990 F.2d 478, 480 (9th Cir. 1993) (citing Carter v. Sea–Land Servs., 816 F.2d 1018, 1020 (5th Cir.1987)).

Consistent with the standard for granting motions to withdraw other waivers of rights, motions to withdraw consent to trial before a magistrate judge may be granted only for good cause, determination of which is committed to the court's sound discretion. Carter, 816 F.2d at 1021. As the Fifth Circuit explained:

> In exercising its discretion, a court should consider a variety of factors, always remaining open and receptive to consideration of these motions. See O'Malley v. United States Fidelity & Guaranty Co., 776 F.2d 494 (5th Cir.1985); Lewis v. Thigpen, 767 F.2d 252 (5th Cir.1985) (applying standard to waiver of jury trial). Among the things a court may consider are: undue delay, Gandy v. Alabama, 569 F.2d 1318 (5th Cir.1978), inconvenience to the court and witnesses, United States v. Lochamy, 724 F.2d 494 (5th Cir.1984), prejudice to the parties, United States v. Unum, 658 F.2d 300 (5th Cir.1981), whether the movant is acting pro se, Lewis, whether consent was voluntary and uncoerced, United States v. Carr, 740 F.2d 339 (5th Cir.1984), whether the motion is made in good faith or is dilatory and contrived, Gandy, the possibility of bias or prejudice on the part of the magistrate, Chanofsky v. Chase Manhattan Corp., 530 F.2d 470 (2d Cir.1976), and whether the interests of justice would best be served by holding a party to his consent, Parks v. Collins, 736 F.2d 313 (5th Cir.1984) (motion to withdraw consent to magistrate).

Id.

Here, given the length of time these proceeding have been pending, withdrawal of consent in order to assign a different presiding judge would cause undue delay and inconvenience as well as prejudice to defendants. There is no suggestion that consent was involuntary or coerced. Beyond plaintiff's disagreement with this Court's rulings, plaintiff does not support his allegations of bias. See United States v. Azhocar, 581 F.2d 735, 739 (9th Cir. 1978) (A judge's previous adverse ruling are not sufficient to demonstrate bias.). The interests of justice favor maintaining the parties' consent decisions. Accordingly, the motion to withdraw consent is denied.

BACKGROUND

Plaintiff alleges he is Nation of Islam (N.O.I.) Muslim and that N.O.I. Muslims may not ingest beef, beans (except navy pea beans) nuts, or turkey during the month of Ramadan. Complaint (ECF #2) at ¶¶ 26, 29. Plaintiff further alleges N.O.I. Muslims pray differently than Sunni Muslims and therefore attending services such as Friday Jummah services at the prison would be disruptive. Id. at ¶ 19.[1] Plaintiff alleges defendants refused to allow him to attend Ramadan service because he did not attend Jummah or have a history of active participation in Islamic services. Id. at ¶¶ 9-10.

Plaintiff asserts that not being able to attend Ramadan forced him to eat during daylight hours because he could not afford commissary food. Plaintiff argues the commissary food is unhealthy and primarily consists of foods N.O.I. Muslims are prohibited from ingesting. Id. at ¶ 29. Plaintiff seeks a declaration that defendants violated his rights; a permanent injunction ordering defendants to stop denying Ramadan services to inmates for not attending Jummah and allow him to participate in Ramadan; designing programs and services for N.O.I. and Temple Muslims including specific Ramadan accommodations; and compensatory and punitive damages in the amount of $100,000.

Defendant Stuart Young is the Assistant Administrator of Religious Services at the Oregon Department of Corrections (ODOC). As such, Young has direct supervisory authority over the chaplains at ODOC's institutions including Two Rivers. Declaration of Stuart Young (ECF #79) at ¶ 6.

---

[1] In addition, plaintiff asserts N.O.I. Muslims and Orthodox Muslims are not supposed to come into contact with one another for security reasons and that N.O.I. Muslims have no obligation to attend Jummah services. Brief in Support of Motion for Summary Judgment (ECF #49) at p. 2; Declaration of Obataiye-Alluh (ECF #50) at ¶¶ 14-15.

Under the religious meals process at ODOC, to attend a religious meal or to receive meal accommodations, an inmate must have a history of attending the religious group's programming when offered in a department facility. Simply being a member of a religious group does not qualify an inmate for religious meal accommodations. Id. at ¶ 9. Mr. Young states ascertaining the sincerity of an inmate's religious beliefs is necessary to prevent inmates from manipulating the system. Id. at ¶ 10-12.

> For sincere believers, Ramadan is seen as a test of devotion, in which physical endurance mirrors the inner spiritual state that a believer constantly strives to improve. Observance during Ramadan includes a small pre-dawn meal called "suhoor." Muslims then fast from dawn until sunset, taking no food or drink during daylight, and break the fast after sunset by a meal called "iftar." In addition, there are prayer recitations and readings of the Koran at prescribed times each day, all of which are specially permitted for Muslim [inmates].
>
> Id. at ¶ 13.

ODOC permits Muslim inmates to eat both pre-dawn and after sunset meals falling before and after regularly scheduled mealtimes. These accommodations impact ODOC's budget and security concerns. Ramadan accommodations also include a hot meal or brown bag dinner during the fast to those on the Ramadan list. If a brown bag dinner is served, a ramen-type soup will be included. Id. at ¶ 14. In addition, fruit dates are provided for the ritual breaking of the fast when the fast ends each evening. Id. at ¶ 16.

The dietician from the food services administration provides a cyclical menu of brown bag dinners (including a meatless alternative) rotated throughout the month. Pork is never included with any of the brown bag dinners, all preparations are halal-compliant, and any meat-based ramen seasonings are kept in a separate packet. Id. at ¶ 15.

On March 13, 2018, plaintiff submitted a grievance complaining he "received a paper from the chaplain saying that [he] [could]n't participate in Ramadan because [he] did not attend service[s]." Declaration of Stewart Young (ECF #79) at Ex. 1. Young responded

> The Religious Meals Process governs religious meals within the institutions and according to the Religious Meals Process: An inmate must have a history of attending the religious group's programming when it has been offered in a department facility. Being a member of a religious group does not automatically qualify an inmate to participate in a religious meal. Therefore, regular attendance in an Islamic service qualifies for participation in Ramadan.

Id. at Ex 2.

Young reviewed plaintiff's housing records and attendance records and determined plaintiff did not have a history of participating in Islamic services offered at Two Rivers. Id.[2]

Plaintiff appealed arguing he only arrived at Two Rivers on December 28, 2017. He then signed up for the February 2018 Jummah prayer services, however, he went into the disciplinary segregation unit (DSU) on March 9, 2018. Id. at Ex 3. Moreover, plaintiff stated he could not attend Jummah prayer services because it was taken off his work schedule when his orderly job changed. Id.[3]

ODOC Religious Services reviewed plaintiff's file and found that although he did sign up for Friday Jummah service on January 3, 2018, he did not attend any of the four services offered that month. Further, after signing up and before he entered DSU, plaintiff attended none of the eight available services. Id. at Ex. 4-5.

---

[2] Plaintiff asserts he had just "cursed the Defendant Borden out in the month of February 2018." Brief in Support of Motion for Summary Judgment (ECF #49) at p. 1.

[3] Plaintiff also now asserts several other inmates participated in Ramadan without attending Jummah services specifically noting K'Shawn Harris and McKeaver Thompson did not attend Jummah services in the same months that plaintiff missed services but were allowed to participate in Ramadan services. Brief in Support of Motion for Summary Judgment (ECF #49) at p. 2; Declaration of Obataiye-Alluh (ECF #50) at ¶ 4.

7   - ORDER

Plaintiff filed a second level appeal on April 12, 2018, and simply stated he would like to appeal. Id. At Ex. 7. ODOC did not change its decision. Id. at Ex. 8. At no point during the available grievance process did plaintiff complain that the Jummah services offered at Two Rivers would not meet his needs as an adherent of the Nation of Islam.

After plaintiff initiated this action and sought a preliminary injunction, ODOC provisionally granted plaintiff's request to participate in Ramadan at ODOC in 2019. Declaration of Stuart Young (ECF #79) at ¶ 31. ODOC has now provided plaintiff with permanent Ramadan accommodations through his custody release date. Id. at ¶¶ 32-33. Accordingly, defendants now move for summary judgment on all claims against them. Plaintiff also seeks summary judgment.

## DISCUSSION

Plaintiff mover for summary judgment asserting defendants violated his religious rights by denying his participation in Ramadan services as a matter of law by: (1) allowing several inmates to participate in Ramadan who did not attend Jummah services; and (2) retaliating against him because he "cursed the defendants out". Plaintiff also contends the defendants "violated his state law claims of negligence, abuse of process, breach of contract, etc. when they denied him to participate on Ramadan." Brief in Support of Motion for Summary Judgment (ECF #49) at p. 3-4.

Defendants cross-move for summary judgment asserting: (1) plaintiff's claims for declaratory and injunctive relief in the form of Ramadan accommodations are moot; (2) plaintiff's claims for declaratory and injunctive relief seeking anything other than Ramadan accommodations are not exhausted; (3) plaintiff is not entitled to money damages under RLUIPA; (4) plaintiff's retaliation, equal protection, and cruel and unusual punishment claims

fail as a matter of law; (5) defendants are entitled to qualified immunity from damages against plaintiff's constitutional claims; and (6) plaintiff's state law claims are barred by the Eleventh Amendment.

1. Ramadan Accommodations are Moot

As noted above, ODOC is now permanently accommodating plaintiff's participation in Ramadan. Accordingly, an injunction requiring such accommodation is moot. Defendants' motion for summary judgment as to plaintiff's claim for a permanent injunction ordering defendants to stop denying Ramadan for not attending Jummah services and to allow him to participate in Ramadan is granted as there is no longer any case or controversy regarding this claim under the Constitution or the RLUIPA. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (A case becomes moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.); Boles v. Neet, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005), aff'd, 486 F.3d 1177 (10th Cir. 2007) (corrective action moots claim for injunctive relief under RLUIPA pursuant to 42 U.S.C. § 2000cc–3(e)). To the extent plaintiff seeks an order with respect to other inmates, plaintiff lacks standing to bring claims on their behalf.

In addition, plaintiff's claim for a declaration that the acts and omissions of defendants violated plaintiff's rights seeks nothing more than an advisory opinion in light of the permanent accommodation of plaintiff's Ramadan participation. See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (Court's role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies.). Accordingly, defendants' summary judgment motion is granted on plaintiff's request for declaratory relief.

### 2. Claims for Relief Beyond Ramadan Participation

As noted above, plaintiff only grieved defendants' decision to not allow him to participate in the Ramadan services offered at Two Rivers. To the extent plaintiff seeks a declaration or injunction regarding Jummah services or any accommodation for N.O.I. Muslims beyond Ramadan participation, plaintiff has not exhausted such claims and therefore may not maintain those claims in this case. 42 U.S.C., § 1997e(a). Accordingly, summary judgment is granted in favor of defendants on plaintiff's prayer for relief seeking programs and services for N.O.I. and Temple Muslims including specific Ramadan accommodations.

### 3. Money Damages under the RLUIPA

The defendants acting in their official capacity as officials for the State of Oregon are immune from damages under the RLUIPA. Alvarez v. Hill, 667 F.3d 1061, 1063 (9th Cir. 2012) (money damages under RLUIPA are not available against states because of their sovereign immunity and suits against state officials in their official capacity are suits against the state). Accordingly, defendants are granted summary judgment against plaintiff's claim for money damages under the RLUIPA.

### 4. Retaliation Claim

Plaintiff did not allege any facts in support of his retaliation claims in his complaint, but in response to the motion for summary judgment, asserts defendants retaliated against him "because he cursed them out and threatened to assault them for denying him Ramadan and because he filed grievances." Declaration in Opposition to Defendants' Motion for Summary Judgment (ECF #83) at ¶7.

A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). To avoid summary judgment, plaintiff must present sufficient evidence demonstrating:

> 1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 599, 567-58 (9th Cir. 2005).

Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the complained of conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Courts should afford appropriate deference and flexibility to state officials trying to manage a volatile environment. Id. at 807. As noted above, ODOC has a practice of ascertaining the sincerity of an inmate's religious beliefs to prevent inmates from manipulating the system because Ramadan accommodations impact budget and security concerns.

No reasonable fact-finder could conclude that defendants' decision to temporarily deny Ramadan accommodations to plaintiff did not reasonably advance a legitimate correctional goal. The Free Exercise Clause is not implicated if an inmate's belief is not sincerely held. Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008) (To implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in religious belief.). Here, ODOC's policy merely ensures the sincerity of an inmate's belief so as not to unnecessarily burden a prison's budget and security concerns. Thus, defendants did not substantially impinge plaintiff's exercise of his religious rights. See Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997) (To establish a free-exercise violation, plaintiff must show that prison regulations or actions substantially

11     - ORDER

burden or chill his exercise of religion by preventing him from engaging in conduct or having a religious experience required by his faith.).

Moreover, plaintiff does not have a right to "curse out" and "threaten" prison officials. See United States v. Walker, 665 F.3d 212, 227 (1st Cir. 2011) (threats are not constitutionally protected speech). In addition, the filing of the grievance, which occurred after the allegedly retaliatory conduct, can not be the basis of the adverse action. Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's retaliation claim.

5.    Equal Protection

Although not alleged in the complaint, plaintiff assets that several other inmates participated in Ramadan without attending Jummah services thus violating his equal protection rights by requiring him to participate in Jummah services. Brief in Support of Motion for Summary Judgment (ECF #49) at p. 2; Declaration of Obataiye-Alluh (ECF #50) at ¶ 4.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998). In addition, a plaintiff could prevail on an equal protection claim as "class of one" by showing defendants intentionally treated him differently from others similarly situated and that there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff contends, without any evidentiary support, that defendants discriminate against Muslims or him specifically by allowing non-Muslims to participate in Ramadan while denying participation to Muslims who had no obligation to attend Jummah services. No reasonable trier of fact could conclude that by instituting a policy requiring religious beliefs to be sincerely held,

defendants discriminated against Muslims in favor of non-Muslims or against plaintiff individually without any rational basis. During the available grievance procedure, plaintiff offered excuses for his failure to attend Jummah prayer services but did not assert his specific religious beliefs as an N.O.I. Muslim prohibited him from attending Jummah services. Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's equal protection claim.

6.  Cruel and Unusual Punishment

To the extent plaintiff asserts a claim under the Eighth Amendment, it is subsumed within his First Amendment and RLUIPA claims. See Oliver v. Adams, 2014 WL 2612076, at *4 (E.D. Cal. June 11, 2014) ("Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, ... must be the guide for analyzing a plaintiff's claims."). Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's claim asserting cruel and unusual punishment.

7.  Qualified Immunity

To the extent any constitutional claims seeking money damages survive, defendants are entitled to qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection afforded by qualified immunity applies regardless of whether the government official's error is "a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting Butz v. Economou, 438 U.S. 478, 507 (1978)).

There is generally a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether plaintiff's alleged facts violate a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) (receded by Pearson v. Callahan, 555 U.S. 223 (2009) (finding Saucier step beneficial, but not mandatory)). Second, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id.

As noted above, plaintiff's grievance through the available process,[4] did not assert any issues with accommodating his N.O.I. Muslim faith in particular with respect to ODOC's sincerely held belief policy requiring participation in Jummah services in order to participate in Ramadan. Because the First Amendment is not implicated absent a sincerely held belief, it is not clear that plaintiff's constitutional rights were violated at the time defendants made the decision to deny plaintiff's request for Ramadan accommodation. Shakur, 514 F.3d at 883–84. Plaintiff's lack of participation in Jummah services may reasonably suggest the lack of a "sincerely held belief."

Qualified immunity entitles an official to fair warning that his conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 739 (2002). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

---

[4] On May 1, 2018, after plaintiff's grievance had been exhausted, plaintiff submitted a form stating he was N.O.I. Muslim and that he doesn't "really have to attend any services because the N.O.I. (Nation of Islam) practices are different from Sunni." Grievance Appeal Form attached to Complaint (ECF #2) at p. 12. The May 1, 2018 letter was the third time plaintiff appealed the decision regarding Ramadan accommodation. ODOC returned the purported grievance appeal noting the grievance process had been exhausted. Id. at p. 10. As noted above, defendants now have agreed to permanently accommodate plaintiff's Ramadan participation.

14   - ORDER

right. Saucier, 533 U.S. at 202. The issue is whether it would be clear to a reasonable officer that his conduct was unlawful. Id. Defendants, lacking any information regarding plaintiff's assertion of incompatibility between Jummah services and his N.O.I. faith during the available appeal process, would not understand that enforcement of the sincerely held belief policy in this manner might be unlawful. Defendants have now granted plaintiff permanent Ramadan accommodation. Accordingly, they are, at a minimum, entitled to qualified immunity with respect to plaintiff's constitutional claims for damages.

8.     Eleventh Amendment

Defendants assert plaintiff's state law claims are barred by the Eleventh Amendment. The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Amendment affirms the fundamental principle of sovereign immunity which limits the grant of judicial authority in Article III of the Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (1984). A State's Eleventh Amendment protection from suit has been extended to suits brought by a State's own citizens, Hans v. Louisiana, 134 U.S. 1, 10 (1890), and suits invoking the federal question jurisdiction of Article III. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996).

A suit against a state agency is considered to be a suit against the state and is also barred by the Eleventh Amendment. Shaw v. California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 603 (9th Cir. 1986). In addition, "[w]hen suit is commenced against state officials, even if they are named and served as individuals, the state itself will have a continuing interest in

15   - ORDER

the litigation whenever state policies or procedures are at stake." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269 (1997).

There are, however, two well-established exceptions to the reach of the Eleventh Amendment. First, Congress may abrogate the States' constitutionally secured immunity by expressing, in unmistakably clear language, its intention to allow the States to be sued in federal court. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242-243 (1985). Second, a state may waive its Eleventh Amendment immunity and consent to be sued in federal court. Id. at 241; Clark v. Barnard, 108 U.S. 436, 447 (1883). "[A] state will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implication by the text as [w]ill leave no room for any other reasonable construction.'" Atascadero, 473 U.S. at 239-240 (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974) (internal quotation omitted)).

"Although a state's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." Atascadero, 473 U.S. at 241. Pursuant to Or. Rev. Stat. § 30.265(3), the State of Oregon must be substituted in place of the individual defendants for purposes of the state law claims in this case.[5] While the State of Oregon has waived immunity for torts committed by its employees, officer, and agents acting in the course and scope of employment in state court, it has not expressly waived its immunity to suit in federal court. Accordingly, this court has no subject matter jurisdiction over the state law tort claims Blair v. Toran, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), aff'd, 12 F. App'x 604 (9th Cir. 2001).

Moreover, even though Congress has vested this court with supplemental jurisdiction over claims related to plaintiff's federal claims, Congress has not abrogated Eleventh

---

[5] Damages alleged in this case do not exceed the permissible amount for substitution. See Or. Rev. Stat. §§ 30.271, 30.272.

16   - ORDER

Amendment immunity through such grant of jurisdiction. <u>Stanley v. Trustees of California State Univ.</u>, 433 F.3d 1129, 1133 (9th Cir. 2006) (supplemental jurisdiction is governed by 28 U.S.C. § 1367, which is silent as to sovereign immunity). Accordingly, defendants are entitled summary judgment in their favor on plaintiff's state law claims.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF #49) is denied, and defendants' motion for summary judgment (ECF #78) is granted. This case is dismissed, and the Clerk is directed to enter a judgment.

DATED this 31st day of March, 2020.

          /s/ Jolie A. Russo
          JOLIE A. RUSSO
          United States Magistrate Judge